**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Nkosi Lelo**

v.

Case No. 1:26-cv-00804-PB-AJ
Opinion No. 2026 DNH 162

**Christopher Brackett,**
**Superintendent, Strafford County**
**Department of Corrections, et al.**

**MEMORANDUM AND ORDER**

Nkosi Lelo, the petitioner in this habeas corpus case, challenges a decision by an immigration judge ("IJ") refusing to release him on bond. Lelo's claim is that the IJ violated his right to due process by failing to undertake an individualized assessment of the evidence and detaining him without sufficient evidence that he is a flight risk. Doc. 1 at 6-8. The government has filed a motion to dismiss contending that the Court lacks jurisdiction to challenge the IJ's decision and otherwise argues that the IJ's decision was based on sufficient evidence. Doc. 8. For the reasons discussed below, I reject the government's jurisdictional challenge and determine that the IJ violated Lelo's right to due process. Accordingly, I will order Lelo's release under appropriate conditions of supervision unless he is promptly granted a new constitutionally sufficient bond hearing before a different IJ.

## I. BACKGROUND[1]

Lelo, a native of Angola, entered the United States as a tourist on a B-2 visa on April 17, 2017, with authorization to remain in the country until October 16, 2017. Doc. 1 at 4; Doc. 1-1 at 40. Lelo did not leave the country prior to that deadline, and has instead remained and built a life here in the nine years since his arrival. See Doc. 1 at 4-5. Lelo has a pending application for asylum, which he timely filed with United States Citizenship and Immigration Services ("USCIS") on May 3, 2017, prior to the expiration of his visa and within the one-year deadline imposed by immigration law. Id. at 4.

While "conducting surveillance at a target address in Windham, Maine" on August 29, 2026, United States Immigration and Customs Enforcement ("ICE") officers observed Lelo's car and "a male subject matching Lelo's description" in the driver's seat. Doc. 1-2 at 2. The officers approached Lelo, identified themselves as ICE officers, and informed Lelo that they had a warrant for his arrest. Id. Lelo followed the officers' instructions and did not resist arrest. Id. Since then, Lelo has remained in custody at the Strafford County Department of Corrections in Dover, New Hampshire. Doc. 1 at 5. He

[1] The material facts are not in dispute and are drawn from the pleadings, attached exhibits, and an audio recording of the September 29 bond hearing supplied by the government.

sought release on bond pursuant to 8 U.S.C. § 1226(a) and received a bond hearing before an IJ on September 29, 2026. Id.

In advance of his hearing, Lelo submitted the following documentation as evidence: proof of his inspection and admittance to the United States in April 2017 pursuant to a B-2 visa; a copy of his asylum application receipt; a declaration from his U.S. citizen sponsor, in which the sponsor states that he is "prepared to assist [Lelo] to attend all future court hearings and help ensure that he reports to all required immigration check-ins"; proof of employment authorization and a letter of support from his employer; tax returns; a mortgage statement showing payments on the home he owns in Westbrook, Maine; and numerous letters attesting to his character and community ties, including from his wife, three children, pastor, and friends in the community. Id.; see generally Doc. 1-1.

The government's evidence consisted of the Form I-213 completed at the time of Lelo's arrest, which outlines Lelo's background, immigration history, and the details of his apprehension by ICE. See Doc. 1-2. At the bond hearing, the government did not argue that Lelo posed a danger to the community. Rather, the government relied only on risk of flight in seeking Lelo's continued detention. The government based its flight risk argument primarily on Lelo's prior failure to depart the United States as required by the terms of his admission and on the speculative nature of any relief

potentially available to him. See Exhibit A to Government's Motion to Dismiss, Bond Hearing Audio (filed conventionally), at 3:13-4:20.

Following the parties' arguments and questioning by the IJ, the IJ issued an oral order denying bond at the end of the hearing.[2] At the outset, the IJ explained that he reached his decision "after considering the evidence, including the documentary evidence, and the arguments of the parties." Bond Hearing Audio, at 10:40-46. He then concluded that although the government had failed to meet its burden to prove that Lelo's release would pose a danger to the community, it had successfully established risk of flight by a preponderance of the evidence.[3] The IJ's flight risk determination consisted of the following analysis:

---

[2] The IJ also issued a one-paragraph written order on September 30, 2026, the day after the bond hearing. Doc. 1-3. In the written order, the IJ notes that he "considered the relevant factors identified in Matter of Guerra, and the totality of the circumstances" and he cites the correct evidentiary standard for risk of flight under Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021). Id. at 1. The IJ did not provide any reasoning in the written order beyond what he had already explained at the bond hearing. See id. ("Considering the factors discussed on the record, individually and cumulatively, the Court finds that the Respondent's risk of flight warrants continued detention without bond."). Therefore, I focus my analysis on the IJ's oral order.

[3] The First Circuit held in Hernandez-Lara that in order to detain a noncitizen under § 1226(a), "due process requires the government to either (1) prove by clear and convincing evidence that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk." 10 F.4th at 41.

> With regard to flight, the court considers the following factors: fixed address in the United States, length of residence in the United States, family ties, employment history, immigration record, attempts to escape, failures to appear, criminal record. The court balances the equities in these factors. The court also looks to the disregard for immigration laws, which is patently obvious here, any prospective relief that is applicable here, sponsorship. The court looks to the recency of those factors. The court also looks to the length of residence, as I mentioned in factor number two. Here the respondent has not obtained any lawful right to remain in the United States over those nine years. So here, applying the standard of preponderance of the evidence, the court finds that DHS has met its burden as to risk of flight. The court finds that there are no alternatives to detention that would ameliorate such risk. Therefore, the court is denying the motion for bond.

Bond Hearing Audio, at 11:03-12:17. Following the IJ's decision, Lelo filed the instant petition with this Court on October 1, 2026. Doc. 1.

## II. STANDARD OF REVIEW

When a person is held "in custody in violation of the Constitution or laws or treaties of the United States," habeas corpus relief is appropriate. 28 U.S.C. § 2241(c)(3). The habeas petitioner carries the burden of proving that his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner."). If a petition "present[s] only issues of law," it may be resolved on the merits without a hearing. See 28 U.S.C. § 2243; see also R. Governing Section 2254 Cases 8(a); LR 7.4(c).

## III. ANALYSIS

Lelo argues that his bond hearing failed to meet the constitutional requirements of due process because the IJ failed to make an individualized determination of Lelo's flight risk and the evidence in the record was insufficient as a matter of law to justify the IJ's decision to detain him. In response, the government argues that the Court lacks jurisdiction to act on Lelo's petition, and it otherwise defends the IJ's decision as constitutionally sufficient. Before turning to the merits of Lelo's petition, I address the government's jurisdictional argument.

### A. Jurisdiction

At the outset, the government argues that 8 U.S.C. § 1226(e) divests the Court of jurisdiction to review an IJ's decision denying bond. See Doc. 8 at 1-3. That provision states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). This Court has on multiple occasions considered the government's argument regarding this language and has uniformly held that § 1226(e) does not limit the Court's jurisdiction to review a habeas petitioner's constitutional challenge to their detention. See, e.g., Lopez Flores v. Brackett, 2026 WL 1179959, at *2 (D.N.H. Apr. 30, 2026); Gupta v.

Brackett, 2026 WL 1734839, at *2 (D.N.H. June 16, 2026); Mayancela Mayancela v. FCI Berlin, Warden, 2025 WL 3215638, at *4-5 (D.N.H. Nov. 18, 2025). As I have previously explained, "[a]lthough § 1226(e) strips the Court of the power to review an IJ's discretionary decision to detain a person subject to removal proceedings," Gupta, 2026 WL 1737839, at *2, "the government does not have 'discretion' to exceed the 'constitutional restraints' on its detention authority," Lopez Flores, 2026 WL 1179959, at *2 (quoting Hernandez-Lara, 10 F.4th at 33-34). Thus, the government's decision to deny bond is unreviewable only when it "falls 'within those limits' set by the Due Process Clause." Id. (quoting Hernandez-Lara, 10 F.4th at 33-34). On the other hand, when a detainee "claims that the government's denial of bond breached those implicit limits . . . this Court has jurisdiction to evaluate that contention." Id. (citations omitted).[4]

Lelo raises precisely the type of claim that this Court has jurisdiction to address. See, e.g., Doc. 1 at 7 ("Respondents have violated Mr. Lelo's due process rights by failing to accord him a constitutionally sufficient bond hearing, where the IJ gives individualized consideration to the facts of his

---

4 The government acknowledges the Court's prior decisions on this point and argues that "to the extent the Court finds that the IJ's decision is reviewable, the review should be limited to whether Petitioner was afforded due process at his bond hearing." Doc. 8 at 3.

case.”). Therefore, § 1226(e) does not preclude my exercise of jurisdiction over Lelo’s petition.

## B. Due Process

Although Article III courts have jurisdiction to review the constitutionality of detainees’ bond hearings, “that review is very deferential.” Lopez Flores, 2026 WL 1179959, at *4 (citing Acero v. FCI Berlin, Acting Warden, 825 F. Supp. 3d 52, 57 (D.N.H. 2026)). “[T]he court is not free to second-guess an IJ’s discretionary decisions.” Gupta, 2026 WL 1734839, at *2. Nevertheless, as my colleague has explained:

> The Immigration Judge “generally must sufficiently explain his or her reasoning to permit appellate or judicial review of their decisions.” Mayancela, 2025 WL 3215638, at *6 (citing Barnica-Lopez v. Garland, 59 F.4th 520, 530 (1st Cir. 2023)). While this does not require an Immigration Judge to “discuss ad nauseam every piece of evidence,” the Immigration Judge must “give reasoned consideration to the evidence as a whole, make supportable findings, and adequately explain its reasoning.” Barnica-Lopez, 59 F.4th at 530 (quoting Pan v. Gonzales, 489 F.3d 80, 87 (1st Cir. 2007)). Thus, while the Immigration Judge “need not spell out every last detail of its reasoning where the logical underpinnings are clear from the record, it is obligated to offer more explanation when the record suggests strong arguments for the petitioner that DHS has not considered.” Rivera-Medrano v. Garland, 47 F.4th 29, 39 (1st Cir. 2022).

Mbiya v. Doe, 2026 WL 2098764, at *5 (D.N.H. July 21, 2026) (citation modified).

Further, because due process requires that bond hearings be individualized, an IJ's decision does not withstand judicial scrutiny where the record reveals that the IJ failed to make an assessment based on facts and circumstances specific to a noncitizen-detainee. See Sall v. Sage, 2026 WL 3259319, at *9 (M.D. Pa. Oct. 29, 2026) ("For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ must be individualized and support a finding that continued detention is necessary to prevent the detainee from fleeing or harming the community." (citation modified)); see also Chakma v. Warden, 2026 WL 3034205, at *3 (D.N.M. Oct. 9, 2026) ("[A] bond decision that rests upon conclusory determinations based on blanket categories . . . and not upon individualized facts specific to a petitioner, does not provide an individualized determination . . . and is thus not constitutionally adequate."); cf. Timbigamba v. FCI Berlin, Warden, 836 F. Supp. 3d 430, 446 (D.N.H. 2026) ("Where an IJ has discretion to consider a noncitizen's release on bond, the IJ must exercise that discretion in an individualized fashion based on the noncitizen's specific circumstances, not merely the procedural posture of their removal proceedings.").

Here, the record contains substantial evidence supporting Lelo's argument that he did not pose a risk of flight and scant evidence supporting the government's contention that Lelo will flee if he is released under appropriate conditions. Lelo has lived in the United States for nine years

with his wife and three children. He owns a home in Maine, has maintained stable employment there (with valid employment authorization), and financially supports his family. He submitted positive letters of support from his U.S. citizen sponsor, employer, wife, children, pastor, and friends attesting to his community ties. Lelo has no criminal record and there was no evidence before the IJ that he ever failed to appear for court proceedings or attempted to evade law enforcement, including when ICE officers arrested him in August. Lelo entered the country lawfully in 2017 and timely filed an affirmative asylum application within weeks of his arrival (and prior to the expiration of his nonimmigrant visa). His application remains pending, and there was no evidence that Lelo has failed to pursue his asylum claim.[5]

Nonetheless, the IJ determined that the government met its burden of proving flight risk for two reasons: (1) Lelo's "patently obvious" disregard for immigration laws; and (2) the fact that Lelo "has not obtained any lawful right to remain in the United States" since he arrived here.[6] For the reasons

---

[5] According to the Form I-213 the government submitted as evidence at the bond hearing, Lelo's asylum case status shows that he is "Eligible for Interview." Doc. 1-2 at 2.

[6] The government also views the IJ's decision as grounded on these two bases. See Doc. 8 at 4-5 ("In denying bond, the IJ focused his decision on the Petitioner's disregard for immigration laws . . . and on Petitioner's failure to obtain any lawful right to remain in the United States over nine years.").

discussed below, I cannot uphold the IJ's reasoning on either of these two factors as sufficient to support a finding of flight risk.

The IJ's first basis for denying bond was what he referred to as Lelo's "patently obvious" disregard for immigration laws. Bond Hearing Audio, at 11:26-32. While the government correctly notes that "an IJ need not discuss ad nauseam every piece of evidence nor spell out every last detail of her reasoning where the logical underpinnings are clear from the record," Doc. 8 at 5 n.1 (quoting Lopez Flores, 2026 WL 1179959 at *4), an IJ's reasoning must, at minimum, reflect that the IJ "[gave] reasoned consideration to the evidence as a whole." Barnica-Lopez, 59 F.4th at 530 (quoting Pan, 489 F.3d at 87). Here, as an initial matter, the IJ's decision does not comport with the due process requirement that it must be grounded in a minimally sufficient consideration of the record in its entirety. Nothing in the record before the IJ suggests that Lelo ever failed to appear at scheduled immigration or legal proceedings. Nor does the record suggest that Lelo resisted arrest or attempted to flee when ICE officers apprehended him in August; on the contrary, by the government's own account, Lelo "complied" when the officers asked him to exit his car, and they handcuffed him "without incident." Doc. 1-2 at 2. The record also reflects that when Lelo initially entered the United States, he did so lawfully on a B-2 visitor visa. Id.; Doc. 1-1 at 40. Lelo timely filed for asylum within the one-year bar imposed by immigration law and

followed the process to obtain employment authorization. See Doc. 1 at 4. The only record evidence the government points to suggesting any disregard for immigration laws, then, is the fact that Lelo failed to leave the United States prior to October 16, 2017—the date his visa authorization expired.[7] Although the IJ stated that he considered and weighed the record evidence, see Bond Hearing Audio, at 10:40-46, his conclusory determination that Lelo's disregard for immigration laws is "patently obvious" gives no indication that the IJ's reasoning on this factor actually accounted for the evidence as a whole. Why Lelo's visa overstay outweighed the otherwise positive evidence in his favor is not apparent from the record, and the IJ's failure to provide any reference to that evidence suggests he impermissibly "simply ignore[d] substantial testimonial and documentary proof." Barnica-Lopez, 59 F.4th at 530 (quoting Pan, 489 F.3d at 87).

Moreover, because the IJ did not provide any explanation as to why Lelo's visa overstay alone would make his appearance at future immigration

---

[7] Indeed, the government's sole argument on this point at the bond hearing was the fact that Lelo had authorization to remain in the United States only until October 16, 2017, and that he failed to depart the country prior to that date on a scheduled flight on May 2, 2017. See Bond Hearing Audio, at 3:20-55.

proceedings less likely,[8] the IJ's reasoning (or lack thereof) evinces a reliance on what essentially amounts to a per se rule that anyone who overstays a visa automatically poses a flight risk. Such a rule is untenable. See Vargas Cruz v. Warden, 2026 WL 3152140, at *4 (D.N.M. Oct. 21, 2026) (citing Chakma, 2026 WL 3034205, at *3 n.3) ("It cannot be the law that all persons who overstay a visa are a flight risk[] per se."). Reliance on such categorical rules violates the principle that bond determinations must be individualized to comport with due process. Cf. Contreras Posada v. Mullin, 2026 WL 3178711, at *3 (D. Colo. Oct. 23, 2026) (reasoning that reliance on the existence of a removal order alone when denying bond "is essentially a presumption of flight risk that could be assigned to a great number of

[8] As other courts have noted, see, e.g., Chavarria Mejia v. Crawford, 2026 WL 819603, at *5 (E.D. Va. Mar. 25, 2026), Board of Immigration Appeals ("BIA") precedent has questioned the relevance of the fact that a noncitizen overstayed their visa to a flight risk determination. In Matter of Patel, the BIA reviewed an IJ's decision to release a noncitizen on bond instead of releasing him on his own recognizance based in part on the fact that the noncitizen "overstayed his student visa." 15 I. & N. Dec. 666, 667 (BIA 1976). The BIA reasoned that factors such as a visa overstay "bear little if any relevance to the issue of whether or not the respondent is likely to appear for his deportation proceeding." Id. Cautioning that "[s]uch a broad interpretation of what constitutes an 'adverse factor' in this context could result in requiring a bond of almost every alien who is held in deportation proceedings," the BIA released the noncitizen on his own recognizance. Id. As the Eastern District of Virginia has pointed out, the BIA "has continued to cite Matter of Patel for the proposition that 'factors unique to each alien must be evaluated in determining suitability for release on custody.'" Chavarria Mejia, 2026 WL 189603, at *5 (quoting In re Helia de la Cruz-Palencia, 2011 WL 2261251, at *1 (BIA May 13, 2011) (unpublished)).

immigration detainees, which 'indicate[s] an absence of the individualization required by due process'" (quoting Lopez v. Paulk, 830 F. Supp. 3d 1356, 1368 (M.D. Ga. 2026))). Thus, the IJ's conclusion regarding Lelo's alleged disregard for immigration laws cannot by itself supply a legally sufficient basis for labeling Lelo a flight risk, as it fails to indicate meaningful consideration of the evidence as a whole.

The second factor in the IJ's flight risk determination, that Lelo "has not obtained any lawful right to remain in the United States over [the] nine years" he has lived here, is similarly deficient. Bond Hearing Audio, at 11:47-58. A failure to obtain lawful status could be probative of flight risk where, for example, evidence that a noncitizen-detainee was delinquent in pursuing relief raises concern that he may attempt to delay the removal process or fail to appear at future immigration proceedings. See De Souza Almeida v. Lowe, 2026 WL 2943125, at *4 (M.D. Pa. Sep. 30, 2026). But no such evidence exists here. The record before the IJ reflects that, on the contrary, Lelo timely applied for asylum within a year of his arrival in the country and prior to the expiration of his visa. See Doc. 1-1 at 44. His asylum claim remains pending and his case status shows that he is eligible for an interview. Doc. 1-2 at 2. No evidence suggests that Lelo is at fault for the length of time it has taken to schedule his interview and for USCIS to process his asylum application.

The IJ's reasoning makes no mention of Lelo's pending asylum application and appears to be based on the mistaken conclusion that Lelo neglected to take any steps toward obtaining lawful immigration status. By overlooking Lelo's pursuit of asylum, the IJ failed to account both for the fact that Lelo is pursuing lawful status and that he is allowed to remain in the country while his asylum claim is pending.[9] Such evidence undermines the IJ's finding that Lelo "has not obtained any lawful right to remain" in the country since his arrival, and the IJ offered no reason to discount that relevant evidence. The IJ's finding thus suggests that he "simply ignore[d]" substantial and directly relevant evidence, rendering his failure to account

---

[9] To be sure, simply applying for asylum does not confer lawful immigration status on an applicant. See 8 C.F.R. § 245.1(d)(1)(i)-(vi) (defining when an individual has "lawful immigration status"). But an asylum applicant is generally authorized to remain present in the country while his or her asylum claim is pending. See Dep't of Homeland Sec., Instructions for Application for Asylum and for Withholding of Removal (July 28, 2026), https://www.uscis.gov/sites/default/files/document/forms/i-589instr.pdf ("While your case is pending, you will be permitted to remain in the United States"); cf. 8 C.F.R. § 208.5(a) (providing that a detainee who is in DHS custody and requests asylum "shall not be excluded, deported, or removed before a decision is rendered on his or her asylum application"); 8 U.S.C. § 1182(a)(9)(B)(iii)(II) ("No period of time in which an alien has a bona fide application for asylum pending . . . shall be taken into account in determining the period of unlawful presence in the United States . . . unless the alien during such period was employed without authorization in the United States."). Indeed, the Form I-797C that Lelo received confirming USCIS's receipt of his asylum application on May 3, 2017 explicitly communicates his right to remain in the country while his asylum claim is being adjudicated. See Doc. 1-1 at 44 ("You may remain in the U.S. until your asylum application is decided.").

for Lelo's asylum application fatal to his reasoning on this factor. See Barnica-Lopez, 59 F.4th at 530 (quoting Pan, 489 F.3d at 87).

Ultimately, I cannot uphold the IJ's decision denying bond on this record. Flight risk "cannot be assumed and a decision concerning a petitioner's freedom must be based on a complete and accurate review of the evidence presented by both the government and the petitioner." Mizhirumbay v. Wesling, No. 26-cv-725-SM-AJ, at *12 (D.N.H. Oct. 26, 2026). Here, the IJ's reasoning reflects that he relied on categorical assumptions when assessing flight risk rather than employing the individualized reasoning that due process mandates. Moreover, the IJ's failure to explain why the two factors he cited for his decision outweighed the substantial countervailing evidence that Lelo presented—in fact, his apparent failure to meaningfully consider that evidence at all—independently renders Lelo's bond hearing constitutionally inadequate.

## IV. CONCLUSION

Because I find that a new bond hearing is sufficient to protect Lelo's rights at this stage, the petition is granted to the extent that the government is ordered to afford Lelo a second individualized bond hearing before a different IJ as soon as practicable. At that hearing, the IJ must hold DHS to the proper standard of proof under Hernandez-Lara, 10 F.4th 19, meaningfully consider the record as a whole, and reach a decision based on

Lelo's individual circumstances. If the government fails to comply, I will grant the writ and set appropriate terms and conditions for Lelo's release during the pendency of his removal proceedings myself.

The government shall file a status report within fourteen days.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

November 13, 2026

cc: Counsel of Record